UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BME FIRE TRUCKS LLC, an Idaho limited liability company; and 223 ROEDEL AVENUE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE CINCINNATI CASUALTY COMPANY, an Ohio corporation,<br><br>Defendant. | Case No. 1:23-cv-00321-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Plaintiffs BME Fire Trucks LLC (BME) and 223 Roedel Avenue LLC's (Roedel) Motion for Reconsideration (Dkt. 86). Plaintiffs challenge the Court's summary judgment ruling dismissing their bad faith claim against Defendant The Cincinnati Casualty Company (Cincinnati). Cincinnati opposes the motion (Dkt. 87). Having reviewed the record and the parties' submissions, the Court finds that oral argument would not significantly aid its decision-making process and decides the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court denies Plaintiffs' motion for reconsideration.

## BACKGROUND

The Court previously set forth the factual and procedural background (Dkt. 83 at 2–3, 17–24). In brief, an underground natural gas pipe serving a manufacturing facility, which Roedel owns and BME operates, leaked after BME diverted heavy vehicle traffic over the pipe. Plaintiffs

submitted a claim to their insurer, Cincinnati (Dkt. 44-4 at 2). Cincinnati retained an engineer, Brian Hansen of Northwest Investigative Engineering, to investigate the claim, and Hansen concluded that the pipe was buried in fill containing rocks causing the pipe to corrode (Dkt. 43 at 2, 7). Because the insurance policy excluded coverage for corrosion, Cincinnati denied the claim (Dkt. 37-6 at 3).

Plaintiffs brought this action seeking coverage for the claim under the policy and alleging that Cincinnati acted in bad faith by denying the claim (Dkt. 27 at ¶¶ 25-38). The parties filed cross-motions for summary judgment (Dkt. 35, 40). Resolving the motions, the Court concluded that genuine issues of material fact regarding the predominant cause of the pipe's leak precluded summary judgment on Plaintiffs' coverage claim (Dkt. 83). The Court, however, granted Cincinnati summary judgment on Plaintiffs' bad faith claim because Plaintiffs failed to show that their claim was "not fairly debatable" (*id.* at 20–25). Plaintiffs seek reconsideration of the Court's ruling on their bad faith claim.

## LEGAL STANDARD

Under Rule 54(b) of the Federal Rules of Civil Procedure, a district court may revise an interlocutory order at any time before entry of final judgment. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). In exercising this discretion, courts may look to the standards governing reconsideration under Rule 59(e). *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 1:17-cv-00519-DCN, 2020 WL 2841517, at *10–12 (D. Idaho June 1, 2020). Under Rule 59(e), a district court may grant relief: (1) to "correct manifest errors of law or fact upon which the judgment rests"; (2) to "present newly discovered or previously unavailable evidence"; (3) to "prevent manifest injustice"; or (4) "if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.

2011); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). The movant bears the burden of establishing the existence of such a circumstance. *See, e.g.*, *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1130-31 (E.D. Cal. 2001). Absent highly unusual circumstances, a court should not grant a motion for reconsideration. *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

**ANALYSIS**

Under Idaho law, a claim for bad faith exists where: "(1) the insurer intentionally and unreasonably denied or withheld payment, (2) the claim was not fairly debatable, (3) the denial or failure to pay was not the result of a good faith mistake, and (4) the resulting harm is not fully compensable by contract damages." *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co*., 291 P.3d 399, 404–05 (Idaho 2012) (quoting *Anderson v. Farmers Ins. Co. of Idaho*, 947 P.2d 1003, 1007 (Idaho 1997)). "Fairly debatable means that there was a reasonable dispute or legitimate question over the eligibility, amount, or value of the claim." *Cedillo v. Farmers Ins. Co.*, 408 P.3d 886, 892 (Idaho 2017).

The insured bears the burden of showing that the claim was *not* fairly debatable. *Robinson v. State Farm Mut. Auto. Ins. Co*., 45 P.3d 829, 832–33 (Idaho 2002). In other words, an insured bears the burden of showing that there was no reasonable dispute or no legitimate question that the claim was covered. "Fundamental to the claim of bad faith is the idea that there must be coverage of the claim under the policy." *ABK, LLC v. Mid-Century Ins. Co.*, 454 P.3d 1175, 1186 (Idaho 2019); *see also Lambirth v. USSA Cas. Ins. Co.*, 667 F. Supp. 3d 1073, 1088 (D. Idaho 2023) ("What is required to sustain a bad faith claim is that there must be coverage of the claim under the policy.").

"An insurer does not act in bad faith if it challenges the validity of a fairly debatable claim." *Lambirth*, 667 F. Supp. 3d at 1089 (D. Idaho 2023) (cleaned up; quoting *McGilvray v. Farmers New World Life Ins. Co.*, 28 P.3d 380, 386 (Idaho 2001)). "When a claim is fairly debatable, the insurer is entitled to dispute the claim and will not be deemed liable for failure to pay the claim." *Id.* (quotation omitted). Likewise, "an insurer does not act in bad faith if it declines to pay sums reasonably in dispute." *Lakeland*, 291 P.3d at 404. "Whether a genuine issue of material fact exists as to whether a claim was fairly debatable is a question of law." *Id.* at 405; *see also Lucas v. State Farm Fire & Cas. Co.*, 963 P.2d 357, 360 (Idaho 1998) (same).

Based on these principles, the Court ruled on summary judgment that Plaintiffs failed to show that their claim was *not* fairly debatable—meaning they failed to refute that there was a reasonable dispute or a legitimate question whether the claim was excluded under the policy. As the Court explained, the policy excludes damage caused by corrosion, and if corrosion caused the pipe to leak, then the claim is not covered (*see* Dkt. 83 at 18-19) (discussing exclusion). At the time Cincinnati denied the claim, there was a legitimate question whether a construction defect resulting in corrosion caused the pipe to leak or, alternatively, whether the diversion of heavy traffic over the pipe caused the leak. In other words, the nature of the leak's cause was fairly debatable, which in turn made the claim's coverage fairly debatable.

**1. Application of the Summary Judgment Legal Standard**

Plaintiffs argue that the Court's ruling violated the summary judgment legal standard because the Court failed to view the facts in their favor and to consider whether a reasonable juror drawing all inferences in their favor could find the claim was not fairly debatable (Dkt. 86-1 at 9, 12). The Court disagrees. The record before the Court on summary judgment showed that, at the

time Cincinnati denied the claim, the cause of the leak (and thus the claim's eligibility for coverage) was fairly debatable.

For example, Hansen opined that corrosion of the pipe caused the leak:

> All buried piping is subject to damage if exposed to stones or rocks in the soil in which the piping is embedded. . . . [A] construction defect occurred in that the piping was buried in native fill which contains stones and rocks. These stones and rocks have damaged the outer felt covering which is intended to protect the piping from corrosion. Due to the damage to the pipe wrap, moisture was able to contact the piping which *resulted in corrosion*. Eventually, *this corrosion led to the leak in the piping*.

(Dkt. 43 at 7) (emphasis added).

Other evidence supports that the pipe was buried in fill dirt containing rocks that could result in corrosion. When submitting Plaintiffs' claim to Cincinnati, BME president Chad Moffat stated that "the leak was caused by whoever installed the two gas lines 20-30 years ago. *They backfilled the lines with fill dirt containing large rocks*. . . ." (Dkt. 44-4 at 2) (emphasis added). Likewise, Plaintiffs' expert engineer, Franco Massari, noted soil conditions containing "large aggregate" and "corrosion" of the pipe (Dkt. 52-1). Specifically, Massari stated that "the pipe I inspected had *localized corrosion around the leak* that is consistent with damaged coating"; in 2005, "there was planned excavation activity in the vicinity of the gas line [that] could have placed material with large aggregate close enough to eventually damage the coating of the pipe"; and "[o]nce the coating was damaged it would be common *for localized corrosion to occur*" (*id.* at 4) (emphasis added).

Although both Hansen's and Massari's reports mention the traffic over the pipe, neither opine that the traffic was the leak's predominant cause; rather, they both note that the traffic was or may have been only a contributing factor. Hansen stated that "heavy equipment driving over the area *may have exacerbated* the condition" (Dkt. 43 at 7) (emphasis added). Similarly, Massari

stated that "the impact of the traffic *contributed* to the failure of the carbon steel line due to stresses and the proximity of the rocks" (Dkt. 52-1 at 4-5). Contrary to Plaintiffs' position, neither of these statements is sufficient to establish that traffic was a predominant factor causing the leak (*see* Dkt. 83) (applying efficient proximate cause doctrine focusing on the predominant cause).

Based on this record and construing all the facts in Plaintiffs' favor, Cincinnati has shown that there is no genuine issue of material fact that Plaintiffs' claim was fairly debatable because there was a basis to reasonably dispute or legitimately question the cause of the leak. Plaintiffs failed to refute this showing. The record is devoid of any evidence that Cincinnati possessed the necessary information to conclude that corrosion did *not* cause the leak or, put another way, that Cincinnati had information showing the claim was payable but withheld payment. Because the evidence shows corrosion may have caused the leak, and corrosion is an excluded cause under the policy, Plaintiffs' claim was fairly debatable, and a reasonable juror inferring all the facts in Plaintiffs' favor could not conclude otherwise. Perhaps Plaintiffs can persuade a jury that Hansen's causation theory is incorrect. But their contrary evidence does not establish that there is a genuine issue of material fact that Cincinnati lacked a reasonable and legitimate factual basis to contest coverage when it denied the claim.

The Idaho Supreme Court's decision in *Lucas*, on which Plaintiffs rely, does not require a different conclusion. In that case, Lucas was involved in an automobile accident, suffered neck and back pain, and reported the accident to his insurer, State Farm. *Id.* at 357-58. After the accident, Lucas saw six different physicians who gave differing opinions about his pain, including that a pre-existing or a congenital condition caused the pain. *Id.* at 358. Thereafter, a neurosurgeon operated on Lucas to relieve the pain and subsequently opined that "the need for surgery was directly related to the automobile accident." *Id.* at 358-59. Lucas sued State Farm after it failed to

pay his surgery-related medical expenses, and the district court ruled on summary judgment that Lucas's claim was fairly debatable based on the conflicting medical opinions. *Id.* at 359.

Reversing this ruling, the Idaho Supreme Court in *Lucas* relied on the neurosurgeon's unequivocal conclusion that the surgery directly related to the accident. *Id.* at 361. Construing the reasonable inferences in Lucas's favor, the Court ruled that the neurosurgeon's "diagnosis is sufficient evidence to support Lucas's contention that his claim was not reasonably in dispute." *Id.* By contrast, there is no unequivocal opinion in this case that traffic passing over the pipe caused the leak and that corrosion did not cause the leak. Unlike *Lucas*, at the time Cincinnati considered Plaintiffs' claim, it did not possess a report from a qualified expert undisputedly agreeing with Plaintiffs' theory of causation. For this reason, this case is distinguishable from *Lucas*.

**2. Consideration of Claim's Amount or Value**

Plaintiffs also challenge the Court's summary judgment ruling by arguing that "Cincinnati [had] the initial burden" to show "there [was] no genuine issue of material fact as to the cause of the loss or the amount or value of Plaintiffs' claims" and that the Court failed to consider "whether the causation or the amount or value of the loss was fairly debatable" (Dkt. 86-1 at 11). Contrary to this argument, the Court's ruling is premised on causation—i.e., it focuses on the predominant cause of the leak under the efficient proximate cause doctrine (Dkt. 83 at 19-24). On summary judgment, Plaintiffs conceded this issue is a genuine issue of material fact for trial; specifically, they acknowledge that "a question of fact remains as to whether rust caused the loss such that the policy's rust exclusion bars coverage" (Dkt. 50 at 2; *see also id.* at 8) ("Issues of material fact exist concerning Cincinnati's assertion that the [pipe] was buried in fill containing rock and stones."). Because there are genuine issues of material fact regarding the predominant cause of the pipe's

leak and because the claim is not covered if corrosion was that cause, Plaintiffs failed to show that the claim's eligibility for coverage was not fairly debatable.

Plaintiffs are correct that the fairly debatable analysis may relate to "the eligibility, amount, *or* value of the claim." *Cedillo*, 408 P.3d at 892 (emphasis added). The Court, however, did not commit an error by limiting its analysis to eligibility. The claim's eligibility for coverage is debatable because an excluded cause—corrosion—may have been the predominant cause of the pipe's leak. Because Plaintiffs failed to show the claim's eligibility was not fairly debatable, it does not matter whether the claim's amount or value was not fairly debatable. The debatability of a claim's amount or value only becomes an issue if the claim is covered.

Neither *Lambirth* nor *Cedillo*, on which Plaintiffs rely, require a different conclusion. Neither case stands for the proposition that the Court must analyze the claim's amount or value even after concluding coverage is fairly debatable. In both *Lambirth* and *Cedillo*, the claim's coverage under the policy was *un*disputed and only the amount of the claim was at issue. *See Lambirth*, 667 F. Supp. 3d 1089-90 (considering whether insurer delayed payment of covered claim or failed to pay undisputed portions of claim); *Cedillo*, 408 P.3d at 892-93 (addressing disputed amount of loss for covered claim). Because the claim's eligibility for coverage here is fairly debatable, Plaintiffs' bad faith claim fails, and there is no need to consider the amount or value of the claim for purposes of dismissing the bad faith claim.

For the reasons discussed above, the Court declines to reconsider its summary judgment ruling dismissing Plaintiffs' bad faith claim.

## ORDER

For the reasons stated above, IT IS ORDERED that Plaintiffs' Motion for Reconsideration (Dkt. 86) is **DENIED**.

**DATED:** November 17, 2026

Amanda K. Brailsford
U.S. District Court Judge